## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAILLE RUSSEL BONSALL,** | : | **CIVIL ACTION** |
| | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 24-5866** |
| **THE COUNTY OF DELAWARE, *et al.*,** | : | |
| | : | |
| Defendants. | : | |

**Perez, J.**                                                                                 **February 23, 2026**

### MEMORANDUM

This case involves claims brought by Plaintiff Maille Russel Bonsall stemming from years of alleged sexual harassment and assaults perpetrated by former Director of the Delaware County Department of Emergency Services ("DES") Timothy Boyce. Ms. Bonsall has sued a number of defendants, including the County of Delaware ("County"), the Delaware County Council ("Council") and its councilmembers, and DES supervisors and employees, alleging violations of her constitutional right to bodily integrity, sex-based discrimination, hostile work environment, and retaliation, and asserting various state tort law claims.

Before the Court are two motions: a motion to dismiss filed by Delaware County Council and the individually named Defendants (ECF No. 36) and a motion for judgment on the pleadings filed by the County of Delaware (ECF No. 37). For the reasons discussed more fully below, the Court dismisses Count I (42 U.S.C. §1983 state-created danger claim) against the Individual Defendants[1] because Ms. Bonsall has failed to plead that any Individual Defendant affirmatively

---

[1] "Individual Defendants" herein refers collectively to Delaware County Councilmembers Monica Taylor, Elaine Paul Schaefer, Kevin Madden, Christine Reuther, and Richard Womack; and County Solicitor Jonathan Lichtenstein, County Executive Director Barbara O'Malley, County Chief Human Resources Office/Personnel Officer Christine Keck, current Acting Director of County Department of Emergency Services ("DES") Edward Beebe, DES Office

acted in a way that created or increased the risk of danger to her. The Court dismisses Counts IV (negligence), V (negligent supervision), and VI (intentional infliction of emotional distress ("IIED")) because Defendants are immune from liability under the Political Subdivision Tort Claims Act ("PSTCA") and because Ms. Bonsall advanced no legal argument in support of her IIED claim against Edward Beebe.

However, the Court denies the County's motion for judgment on the pleadings with respect to Count I (*Monell* claim) because Ms. Bonsall has pled sufficient facts to support an inference that County officials knew of and acquiesced in the custom within DES of deliberately ignoring or covering up sexual misconduct. The Court also denies the County's motion with respect to Counts II and III (discrimination, hostile environment, and retaliation claims under Title VII and the Pennsylvania Human Relations Act ("PHRA")) because Ms. Bonsall has sufficiently pled discrimination based on a hostile work environment and exhaustion of administrative remedies, and because Boyce had supervisory authority over Ms. Bonsall sufficient to establish vicarious liability at this stage.

## I.     Factual Background[2]

Plaintiff Maille Bonsall, a 39-year-old woman, worked for DES from 2009 through February 28, 2025. ECF No. 33 ¶¶ 1, 10. She worked first as a dispatcher and then, beginning in March 2019, as Executive Assistant to DES Director Timothy Boyce. *Id.* ¶¶ 1, 14. Ms. Bonsall was promoted to Deputy 911 Coordinator on October 8, 2020. *Id.* ¶ 33.

---

Manager Regina Rodia, DES Deputy Director of Training Samantha Cox, DES Deputy Director Anthony Mignogna, and Chief of Special Operations Danielle Koerner.

[2] For purposes of these motions, the Court accepts as true all well-pled factual allegations in the Second Amended Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *see also Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019).

Ms. Bonsall alleges Boyce "deliberately, repeatedly, and continuously subjected [her] to unwanted verbal, physical, and sexual harassment, during and after work hours" between March 2019 and the ultimate termination of his employment in April 2024. *Id.* ¶ 16. She describes numerous incidents that occurred during that time period.

In mid-September 2019, for example, Boyce thrust his phone in Ms. Bonsall's face, showing her graphic pictures of his private parts. *Id.* ¶ 19. That month, he asked Ms. Bonsall to join him on a picnic. *Id.* ¶ 22. When she said no, he demanded she accompany him in his car to a meeting but drove her to a wooded area instead. *Id.* ¶ 22. Ms. Bonsall was scared and confused and hesitated to get out of the car. *Id.* When she eventually got out, Boyce forcibly pulled her to him and tried to kiss her; when she pulled away, he persisted and grabbed her chest and breasts. *Id.* Later that month, on what Boyce led Ms. Bonsall to believe was a trip to a conference, Boyce again assaulted her, pushing her into the back seat of the car, placing his face on her, grabbing her breasts, and putting his hand into her pants. *Id.* ¶ 24.

The forcible touching continued in 2020 when Boyce required Ms. Bonsall to work in the courthouse with him while other employees were working from home due to the Covid-19 pandemic. *Id.* ¶¶ 28–29. After Ms. Bonsall was promoted and moved to an office separate from Boyce's, Boyce continued to be "obsessed" with Ms. Bonsall and would "com[e] into her office all the time," despite Ms. Bonsall repeatedly pleading with him to stop his advances. *Id.* ¶ 33. Boyce believed they were "in love." *Id.* Following her promotion, Ms. Bonsall was forced to use a computer in Boyce's office to do her work. *Id.* ¶ 47. If Boyce was in his office at the time, he would close the door and masturbate in front of her. *Id.*

"From early or mid-2021 until Boyce's departure [from DES in April 2024], virtually every morning, Boyce approached Plaintiff and tried to kiss her." *Id.* ¶ 34. In an effort to avoid Boyce,

Ms. Bonsall would go outside to smoke. *Id.* When she did so, Boyce would send Edward Beebe to find her and send her back to him. *Id.* Ms. Bonsall believes that "Beebe had no problem with being a 'procurer' for Boyce and must have known what Plaintiff was being subjected to." *Id.*

In July 2023, Boyce continued his misconduct. For example, on one occasion, "he aggressively put his hand down [Ms. Bonsall's] pants," and after she fled, he told her he would have to "punish his bad girl." *Id.* ¶ 39. On July 28, 2023, Boyce sent all employees home early for the day, with the exception of 911 dispatchers and Ms. Bonsall. *Id.* ¶ 41. Boyce brought a cup of champagne into her office around noon, pressuring her to drink it and "refusing to take 'no' for an answer." *Id.* Four hours later, Ms. Bonsall woke up alone on the office floor, feeling sick and unable to remember anything that had happened in the last four hours. *Id.* ¶ 41.

Throughout the years, Boyce isolated Ms. Bonsall and instilled fear in her based on his political connections, telling her, for example, that she would keep her job "as long as she did whatever Boyce told her to do." *Id.* ¶ 18. Ms. Bonsall was "told by others that everyone in the Courthouse assumed that she and Boyce were having an affair." *Id.* ¶ 31. Boyce would refer to Ms. Bonsall as "his girlfriend" around the County and other employees at DES. *Id.* ¶¶ 61, 75, 79. Fearing for her job, Ms. Bonsall never reported Boyce's actions while Boyce was employed. *Id.* ¶ 18. However, Ms. Bonsall believes supervisory personnel "were well aware of Boyce's inappropriate behavior towards Plaintiff and other women . . . and cho[se] to ignore the predatory and dehumanizing situation." *Id.* ¶ 60; *see also id.* ¶ 75 ("Ms. Rodia has also recently acknowledged to Plaintiff that she knew that Plaintiff was unsafe with Boyce.").

Boyce's sexual harassment was not limited to Ms. Bonsall, and Ms. Bonsall alleges that Defendants Beebe, Rodia, and Mignogna witnessed him make inappropriate comments and knew of his illicit behavior. *E.g.*, *id.* ¶¶ 72 (Beebe and Rodia witnessed incident involving Brigid Payne

4

in low cut tank top where Boyce asked her to bend over so he could see her chest), 74 (Brigid Payne reporting same to Mignogna and Cox), 75 (Rodia called Ms. Bonsall Boyce's girlfriend and told another employee not to use the bathroom across from Boyce's office because "that's where nasty things happen"), 76 (Beebe would repeatedly direct Ms. Bonsall to return to Boyce when she tried to distance herself), 78 (Beebe, Mignogna, and Rodia saw Boyce enter Plaintiff's office and close the door, and Bonsall reported to Rodia Boyce's inappropriate requests that Bonsall go with him alone in his car). Despite witnessing these incidents and receiving reports, Beebe, Rodia, and Mignogna did not report them to Human Resources ("HR"). *Id.* ¶ 78.

Ms. Bonsall also alleges that the Council received notice of Boyce's misconduct toward at least one female employee through her filing of an EEOC Charge in late January 2024. *Id.* ¶ 83. In April 2024, a criminal investigation was initiated by the Delaware County District Attorney's Office. *Id.* ¶ 84. The Council placed Boyce on administrative leave on April 25, 2024. *Id.* ¶ 86. On May 10, 2024, the Council terminated Boyce's employment, and on May 16, the Pennsylvania Attorney General filed a criminal complaint against him based on his misconduct toward Jacqueline Kahler. *Id.*

Ms. Bonsall essentially asserts this response was too little, too late. She contends Defendants had an affirmative obligation as County officials and employees to inquire about and investigate and report Boyce's behavior to HR. *Id.* ¶ 6. Indeed, the County Personnel Handbook specifically requires a department director or supervisor to report complaints of sexual harassment. *Id.* ¶ 95. Had Defendants exercised their "affirmative obligations" to report and investigate Boyce's misconduct, Boyce would have been removed and would have never had the chance to harm Ms. Bonsall. *Id.* ¶¶ 6, 81, 107.

Boyce's removal from DES was not the end of Ms. Bonsall's ordeal. After Boyce was placed on administrative leave, Ms. Bonsall dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). *Id.* ¶ 10. Bonsall alleges that afterward, in an effort to make her quit her job, Individual Defendants retaliated against her by stripping her of key responsibilities associated with her role, restricting her access to important files, excluding her from meetings, changing her hours and user permissions, isolating and ridiculing her, and acting hostilely toward her. *Id.* ¶¶ 108–12, 117. Furthermore, after Ms. Bonsall initiated this lawsuit, Beebe reprimanded Ms. Bonsall regarding her use of profanity in the office and reported it to HR, despite DES's tolerance of other employees' use of profanity in the office. ECF No. 33 ¶ 115. The following month, Ms. Bonsall complained of feeling unsafe in the office, and she was placed on paid administrative leave while an investigation was conducted. *Id.* ¶ 120. Ms. Bonsall was also confronted by representatives of the District Attorney's Office based on a false report that she had recorded a meeting at DES. *Id.* ¶ 121. Ms. Bonsall believes Mignogna filed the false report. *Id.* ¶ 122. On February 28, 2025, Ms. Bonsall was fired from DES. *Id.* ¶ 126.[3]

## II.    Procedural History

Plaintiff Maille Bonsall dual-filed a charge of discrimination with the EEOC and PHRC on May 15, 2024. ECF No. 33 ¶ 10. She filed a second charge, this time for retaliation, on March 9, 2025, after she was fired from DES. *Id.* After receiving right-to-sue letters, Plaintiff initiated this

---

[3] In its Answer, the County denies many of the allegations in the SAC and asserts that Boyce and Ms. Bonsall were in a consensual, long-term romantic relationship where Boyce's sexual advances towards Bonsall were not unwanted, and both parties consensually exchanged naked photos and sexual texts. *See, e.g.*, ECF No. 35 ¶¶ 1, 16, 38, 41, 51. It further denies the allegations of retaliation and contends Ms. Bonsall's employment was terminated after an investigation revealed she had sent inappropriate text messages and photographs to a County-owned device, was potentially under the influence of drugs or alcohol while working, altered her time records, and recorded colleagues without their consent. *Id.* ¶¶ 108, 111, 127. For purposes of these motions, however, the Court accepts the facts pled in the SAC as true. *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). The Court also notes that the County's motion does not rely on any of the contrary facts it asserted in its Answer.

action on November 1, 2024, ECF No. 1, and first amended her complaint on February 10, 2025, ECF No. 13. The County filed an answer on February 28, 2025. ECF No. 14. On April 2, 2025, the County moved for judgment on the pleadings, ECF No. 16, and the remaining Defendants moved to dismiss the first amended complaint, ECF No. 17.

On September 3, 2025, while Defendants' motions were pending, Ms. Bonsall moved for leave to file a second amended complaint to include new facts relating to her February 2025 firing and to add a procedural due process claim. ECF No. 25. On October 7, 2025, the Court granted leave only with respect to the additional factual allegations, ECF No. 32, and Ms. Bonsall filed the Second Amended Complaint ("SAC") on October 13, 2025, ECF No. 33.

The SAC raises the following six claims:

- Count I (against the County and all Defendants in their official and individual capacities): Section 1983 substantive due process claim for violation of her Constitutional right to bodily integrity, based on

    (1) a state-created danger theory, and

    (2) *Monell* claim based on the County's unconstitutional customs and policies of deliberately ignoring and failing to investigate Boyce's misconduct;

- Count II (against the County): Title VII claim for sex discrimination, maintenance of a hostile work environment, and retaliation;

- Count III (against the County): PHRA claim for sex discrimination, hostile environment, and retaliation;

- Count IV (against all Defendants): Negligence, including negligent infliction of emotional distress;

- Count V (against the County, County Council, Individual Councilmembers, Jonathan Lichtenstein, Christine Keck, and Barbara O'Malley): Negligent supervision; and

- Count VI (against Beebe and the County): Intentional infliction of emotional distress.

ECF No. 33.

The County answered the SAC on October 27, 2025. ECF No. 35. The same day, the County filed the instant Motion for Judgment on the Pleadings, ECF No. 37, and the remaining

defendants filed the instant Motion to Dismiss, ECF No. 36. On November 10, 2025, Plaintiff responded in opposition to the Motion for Judgment on the Pleadings, ECF No. 39, and to the Motion to Dismiss, ECF No. 38.

Additionally, this case has been consolidated for discovery purposes with three other cases brought by DES employees, asserting similar (and sometimes identical) claims involving Boyce's misconduct against them. *See* ECF No. 40 (consolidating this case with *Kahler v. Cnty. of Dela.*, No. 24-5219, *Payne v. Cnty. of Dela.*, No. 25-295, and *Senkow v. Cnty. of Dela.*, 25-3331).

### III.        Legal Standards

Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed, so long as they move early enough not to delay trial. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3rd Cir. 2017). The court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party, and may not grant the motion unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (citation modified).

Similarly, under Rule 12(b)(6), a court considers whether a complaint contains sufficient factual material that, when assumed true and considered in the light most favorable to the plaintiff, states a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). When considering motions brought under Rule 12(b)(6) and Rule 12(c), "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman*, 873 F.3d

at 417–18. The court may consider only the allegations in the complaint and any documents integral thereto or explicitly relied upon. *Wolfington*, 935 F.3d at 195.

## IV.    Ripeness of the Motion for Judgment on the Pleadings

A Rule 12(c) motion is ripe "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "The pleadings are closed after an answer is filed, along with a reply to any additional claims asserted in the answer." *Cook v. Transunion et al.*, No. 23-1146, 2024 WL 128204, at *1 (E.D. Pa. Jan. 11, 2024) (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)). Some courts have held that a Rule 12(c) motion is not ripe in a multi-defendant case until all defendants have answered the complaint. *Id.*; *Knox v. Herman Gerel, LLP*, No. 12-2238, 2016 WL 75004, at *8 (E.D. Pa. Jan. 7, 2016). The court may exercise its discretion, however, to entertain a Rule 12(c) motion, even where not all defendants have answered, so long as the non-moving party will not be prejudiced. *Knox*, 2016 WL 75004, at *8; *Castillo-Perez v. City of Elizabeth*, No. 11-6958, 2014 WL 1614845, at *1 n.2 (D.N.J. Apr. 21, 2014).

Ms. Bonsall argues that the pleadings are not closed because not all Defendants have answered the SAC and, therefore, the County's motion is not ripe. ECF No. 39 at 5. Ms. Bonsall has had the opportunity to respond to the County's Rule 12(c) motion. She does not argue she will be prejudiced if this Court considers the motion before the remaining Defendants have answered the SAC. The Court will exercise its discretion to consider the County's motion at this juncture because the issues are familiar to the parties and the Court, given that they have been addressed on multiple occasions in related cases with which this matter has been consolidated and because the Court must apply the Rule 12(b)(6) standard for dismissal. Furthermore, the Court grants the County's Rule 12(c) motion only with respect to the claims from which the County is unquestionably immune—an issue Ms. Bonsall does not dispute—so the Court finds there is no prejudice.

## V.        Count I: Section 1983 Substantive Due Process Claim

As an initial matter, the County argues Ms. Bonsall's Section 1983 claims are time-barred because she alleges Boyce harassed and assaulted her beginning in 2019. The Court disagrees.

Federal courts in Pennsylvania apply a two-year limitations period to §1983 claims. *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003). Ms. Bonsall filed her complaint on November 1, 2024. Many of the alleged violations of her right to bodily integrity occurred within the limitations period, between November 1, 2022, and Boyce's departure from DES in April 2024. *See* ECF No. 33 ¶¶ 16, 34 ("From early or mid-2021 until Boyce's departure, virtually every morning, Boyce approached Plaintiff and tried to kiss her."), 38 ("There were times between 2023 and 2024 that [Boyce] was so forceful that he would pull [Plaintiff] over to him by her pants. He would ask to see her underwear, ask what her bra looked like and asked her to show him . . . ."), 39 ("On one occasion, in July, 2023 [Boyce] aggressively put his hand down [Plaintiff's] pants."), 41 (describing July 28, 2023 incident where Boyce brought Plaintiff  champagne, which Plaintiff drank after he refused to take "no" for an answer, and subsequently woke up on her office floor with no memory of how she got there). While certain facts in the SAC predate November 1, 2022, the statute of limitations does not preclude Ms. Bonsall's Section 1983 claims in their entirety. Accordingly, the Court denies the County's motion on these grounds.

### A.  State-Created Danger Claim against Individual Defendants

Individual Defendants move to dismiss Count I because the SAC does not show they took any affirmative act that put her in danger or increased the danger of being sexually assaulted by Boyce. This Court agrees and dismisses the state-created danger claim.

Under 42 U.S.C. § 1983, a plaintiff may sue a state actor who violates her constitutional rights while acting under color of state law. Generally, however, the Due Process Clause does not require a government employer to protect its employees from harm or provide a safe working

environment. *Kneipp v. Tedder*, 95 F.3d 1199, 1204–05 (3d Cir. 1996); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992). A state has an affirmative duty to protect members of the public only where there is a special relationship between the parties that involves some restraint on the plaintiff's personal liberty or where the state actor created the danger that caused the plaintiff's harm. *Johnson v. City of Phila.*, 975 F.3d 394, 398–400 (3d Cir. 2020).

To state a state-created danger claim, a complaint must show: (1) the plaintiff's harm was "foreseeable and fairly direct"; (2) "a state actor acted with a degree of culpability that shocks the conscience"; (3) a relationship between the state and plaintiff exists making the plaintiff "a foreseeable victim . . . or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions"; and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citation modified). Ms. Bonsall's claim fails with the fourth element.

With the fourth element, "an alleged failure **to do something**, standing alone, cannot be the basis for a state-created danger claim." *Johnson*, 975 F.3d at 401 (citation omitted). Rather, a plaintiff must show there was a "misuse of state authority," not merely "a failure to use it," and that misuse of authority put the plaintiff in danger. *Bright*, 443 F.3d at 281–82. The question is whether the alleged affirmative act "created a new danger" or rendered the plaintiff "more vulnerable to danger than had the state not acted at all." *Morrow v. Balaski*, 719 F.3d 160, 178 (3d Cir. 2013) (quoting *Bright*, 443 F.3d at 281). It is not enough to allege "officials might have done more" to prevent a harm. *Id.* at 179. They must have "created or increased the risk itself." *Id.*

Here, Ms. Bonsall relies on Individual Defendants' inaction—failures to report Boyce's misconduct they witnessed or learned of—in support of her claim, but a failure to act is not an

affirmative misuse of state authority. *See Johnson*, 975 F.3d at 400–01. Additionally, Individual Defendants' failures to investigate or report Boyce's misconduct did not "create" the danger to Ms. Bonsall—Boyce did. *See Morrow*, 719 F.3d at 178–79. Here, rather than establishing any affirmative act by Individual Defendants, the SAC alleges only that Individual Defendants did "not act[] at all." *Id.* at 178. This is insufficient.

### B. *Monell* Claim against the County

The County moves for judgment on the pleadings with respect to the *Monell* claim asserted against it in Count I because, it argues, Ms. Bonsall has failed to show its custom caused the violation of her constitutional right to bodily integrity. The County further argues "Bonsall has failed to establish that the County's policymakers affirmatively proclaimed a policy or knew of and acquiesced in a custom which caused the violation of her right to be free from discrimination and harassment." ECF No. 37 at 13. They contend that Plaintiff must show the County's policymakers (*i.e.*, the Councilmembers at the time) knew of and acquiesced in the custom of ignoring sexual harassment within DES. *Id.* at 14. The deficiencies the County identifies are not fatal to Ms. Bonsall's claim at this stage.

Under Section 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a plaintiff may hold the municipality liable for violations of her constitutional rights only if the alleged violation "was caused by the municipality's policy or custom." *Johnson*, 975 F.3d at 403. A "custom" is the practice of state officials, where not authorized by law, that is "so permanent and well-settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation modified). "[C]ustom may be established by proving knowledge of, and acquiescence to, a practice." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

A plaintiff need not "plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to [her] injuries." *McIntyre v. Cnty. of Del.*, No. 18-5066, 2019 WL 3934914, at *5 (E.D. Pa. Aug. 19, 2019) (denying motion to dismiss where plaintiffs detailed the many ways in which the county's custom and practice of unequal treatment of male and female employees was carried out). It is enough at the pleading stage to allege facts supporting the inference that the plaintiff's injuries were caused by the acts of an individual as a result of County policy or custom. *See Rodriguez v. City of Phila.*, No. 14-7362, 2015 WL 4461785, at *4 (E.D. Pa. July 21, 2015) (denying motion to dismiss where plaintiff was denied a cast on a broken bone based on prison policy, even where plaintiff could not identify specific policy).

Ms. Bonsall has alleged that County officials, including Councilmembers, exercised deliberate indifference by "deliberately ignoring and failing to investigate Boyce's misconduct against Plaintiff and others." ECF No. 33 ¶ 135. She alleges that, not only were a multitude of individuals aware of Boyce's misconduct, they were further notified by EEOC complaints, but they did not investigate. *See id.* ¶ 83. Furthermore, Boyce not only harassed and assaulted Ms. Bonsall but multiple other women in the workplace and "everyone in the Courthouse" knew about Boyce's misconduct. *See id.* ¶ 31. Additionally, Boyce believed the County's custom protected him and allowed his behavior, claiming he could "hide in plain sight" and that he had Councilmembers "in his pocket." *Id.* ¶¶ 18, 30. At this stage, these allegations are sufficient to support an inference that Councilmembers were aware of, and acquiesced in, a custom of covering up harassment and abuse as opposed to reporting it. *See Ramos-Vazquez v. Primecare Med., Inc.*, No. 09-00364, 2010 WL 3855546, at *9 (E.D. Pa. Sept. 30, 2010) ("At this stage, Plaintiff cannot be expected to specify

and articulate which policy, procedure or custom resulted in these actions; nor should he be expected to know which entity formulated each policy."). To the extent the County denies this knowledge, the Court cannot resolve material issues of fact in a motion for judgment on the pleadings. *Wolfington*, 935 F.3d at 195. Therefore, Count I may proceed against the County.[4]

## VI.    Counts II and III: Discrimination, Hostile Environment, and Retaliation

Ms. Bonsall brings Counts II and III against the County under Title VII and the PHRA, respectively. The County moves for judgment on the pleadings for failure to state a claim and failure to exhaust administrative remedies. The Court finds Ms. Bonsall has sufficiently pled a retaliation claim and a discrimination claim based on the hostile work environment she endured and that, at this stage, she has sufficiently pled she exhausted her administrative remedies.

### A.  Discrimination and Hostile Environment

In moving for judgment on the pleadings, the County first argues that Ms. Bonsall has failed to state a claim for discrimination because she suffered no adverse employment action; to the contrary, she was promoted. ECF No. 37 at 16. The Court understands the County's confusion with respect to Ms. Bonsall's discrimination claim. She does not distinguish between her claim of discrimination and her claim of a hostile work environment. Nonetheless, the Court interprets her discrimination and hostile environment claims to be one and the same—the adverse employment action she suffered was that she was forced to endure a hostile environment in which she experienced daily sexual harassment by Boyce. *See* ECF No. 39 at 10 ("Defendant County ignores

---

[4] As in the related cases, the Court dismisses Count I against the Council and Individual Defendants in their official capacities because their inclusion in this claim would be redundant. *See, e.g.*, *Kahler v. Cnty. of Del.*, No. 24-5219, 2025 WL 2778092, at *7 (E.D. Pa. Sept. 29, 2025) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Wardlaw v. City of Phila.*, No. 09-3981, 2011 WL 1044936, at *9 (E.D. Pa. Mar. 21, 2011) (noting the "inherent redundancy in naming as defendants" both the municipality and the individual defendant in his official capacity).

the oppressive conditions of her employment under Boyce and his successors that makes for sex-based discrimination and a hostile work environment.").

To establish a claim for sex discrimination under Title VII and the PHRA, a plaintiff must allege she suffered "some 'disadvantageous' change in an employment term or condition," because of her sex. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024); *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015) ("Claims brought under the [PHRA] are generally interpreted co-extensively with Title VII claims." (internal punctuation omitted)). "[A] plaintiff may prove an adverse employment action by proving that he or she was subjected to a hostile work environment." *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014) (non-precedential); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) ("[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."). Ms. Bonsall describes repeated unwelcome sexual advances and unconsented touching over the course of her employment at DES. The Court finds Ms. Bonsall has sufficiently alleged she suffered an adverse employment action in the form of a hostile environment.

The County next argues that Individual Defendants had no reason to know of Boyce's harassment and that they believed Boyce and Ms. Bonsall were in a consensual relationship. ECF No. 37 at 17. Because of their lack of knowledge, the County argues it cannot be held vicariously liable. *Id.* The County also argues that Ms. Bonsall's claim fails because she did not "take advantage of the internal complaint procedures afforded to her by the County." ECF No. 37 at 16.

The Court finds these arguments unpersuasive. First, Boyce was Ms. Bonsall's supervisor and, under applicable agency principles, the County can be held liable for his misconduct. Title VII makes it unlawful for an employer to discriminate against any individual on the basis of sex.

42 U.S.C. § 2000e-2(a). It defines "employer" to include "any agent" of the employer. 42 U.S.C. § 2000e(b). Accordingly, courts apply agency principles to determine when an employer may be held vicariously liable for sexual harassment perpetrated by their employees. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754–55 (1998). Under agency principles, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Id.* at 765. Ms. Bonsall has alleged Boyce was her supervisor with immediate authority over her and that he repeatedly sexually harassed her from 2019 through the termination of his employment in 2024. This is enough at this stage to hold the County vicariously liable for Boyce's misconduct. *Id.*

Second, with respect to Ms. Bonsall's failure to report the harassment, this is more appropriately raised as an affirmative defense. The County may raise as an affirmative defense that Ms. Bonsall "unreasonably failed to take advantage of any preventive or corrective opportunities" and that it "exercised reasonable care to prevent and correct promptly [Boyce's] sexually harassing behavior." *Id.*

### B.  Exhaustion of Administrative Remedies

Ms. Bonsall's first EEOC charge, which was filed on May 15, 2024, alleged she was subject to sex discrimination on a continuing basis. ECF No. 33 ¶ 10. Ms. Bonsall experienced retaliation between May 14, 2024 and February 28, 2025, when she was fired. *Id.* ¶¶ 108–127. Consequently, on March 9, 2025, Ms. Bonsall filed a second charge of retaliation. *Id.* ¶ 10. The County argues Ms. Bonsall does not have a viable retaliation claim because her first charge filed with the EEOC does not allege retaliation, and the retaliation claims are not "fairly within the scope of" the first EEOC complaint. ECF No. 37 at 19.

In Pennsylvania, Title VII plaintiffs must file a charge with the EEOC within 300 days of an alleged discriminatory or retaliatory act. 42 U.S.C. § 2000e-5(e)(1); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). If "the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom," a plaintiff's claims are not barred for failure to exhaust administrative remedies. *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984) (per curiam)). Claims are within the scope of the original charge if they arise while the EEOC investigation is pending, "are closely related to conduct alleged in the charge, or are explanations of the original charge." *Smith-Cook v. Nat'l R.R. Passenger Corp. (AMTRAK)*, No. 05-0080, 2005 WL 3021101, at *3 (E.D. Pa. Nov. 10, 2005). The question is whether "a reasonable investigation by the EEOC would have encompassed the new claims." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984). "Whether the actual EEOC investigation uncovered any evidence of retaliation is of no consequence." *Id.*

Although the Third Circuit has not directly addressed the issue, other Circuits have found that a claim alleging retaliation for filing an EEOC charge is reasonably related to the initial charge of discrimination. *See Lantz v. Waynesboro Area Sch. Dist.*, No. 16-CV-0224, 2016 WL 6039129, at *5 (M.D. Pa. Oct. 14, 2016) (collecting cases from the Fourth, Seventh, Tenth, and Second Circuits); *see also Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018) ("In the paradigmatic case for which the 'reasonably related' doctrine was adopted, retaliation occurs while the EEOC charge is still pending before the agency. It is well established that the plaintiff may then sue in federal court on both the adverse actions that gave the impetus for the initial EEOC charge and the retaliation that occurred thereafter, even though no separate or amended EEOC charge encompassing subsequent retaliation was ever filed."). Here, the EEOC's investigation of

the first charge was open from May 15 through October 8, 2024. ECF No. 33 ¶¶ 10–11. Acts of retaliation taken within that time were fairly within the scope of the EEOC charge.

With respect to the later acts of retaliation, Ms. Bonsall filed a second charge with the EEOC on March 9, 2025. The alleged acts of retaliation that occurred within 300 days of the filing of the second EEOC complaint—on or after May 13, 2024—are actionable.

Finally, the County contends Ms. Bonsall failed to timely exhaust her administrative remedies under Title VII because she alleges no facts supporting a discrimination or hostile environment on or after July 19, 2023, three hundred days before she dual-filed her EEOC charge. ECF No. 37 at 17–18. The County is wrong. Ms. Bonsall does allege continuing harassment up until Boyce's termination in April 2024. *See* ECF No. 33 ¶¶ 16, 34, 38, 39, 41. Accordingly, like Ms. Bonsall's § 1983 claim, dismissal is not warranted.

With respect to Ms. Bonsall's PHRA claim, the County argues the PHRC has not completed the administrative process, so Ms. Bonsall's claim is premature. ECF No. 37 at 18. Under the PHRA, a complainant may not file suit in court until after the PHRC has had one year to resolve her administrative complaint. 43 Pa. C.S.A. § 962(c)(1). After a year has passed, if the PHRC has not resolved her complaint, a complainant may bring an action in court, regardless of whether the PHRC has issued a right to sue letter. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001). Plaintiffs may cure timing deficiencies by refiling their complaints after one year passes. *See, e.g.*, *Eldridge v. Mun. of Norristown*, 828 F. Supp. 2d 746, 758 (E.D. Pa. 2011); *Rosetsky v. Nat'l Bd. of Med. Examiners of U.S., Inc.*, 350 F. App'x 698, 703 n.3 (3d Cir. 2009).

Ms. Bonsall dual-filed a discrimination charge with the EEOC and PHRC on May 15, 2024. ECF No. 33 ¶ 10. She filed the SAC on October 13, 2025, over one year after filing with the PHRC. Therefore, any previous timing deficiency has now been cured, and her PHRA claim may proceed.

## VII.        Counts IV and V: Negligence and Negligent Supervision

Ms. Bonsall asserts a negligence claim against the County and "All Defendants" and a negligent supervision claim against the County, County Council, and Councilmembers. These claims center around Defendants' failures to take any action to stop or prevent Boyce's mistreatment of Ms. Bonsall. *See* ECF No. 33 ¶¶ 160–166, 171–179. Defendants move to dismiss both counts because they argue they are immune from liability under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8541, *et seq.* ECF No. 36 at 14; ECF No. 37 at 20.

Under the PSTCA, municipalities, local agencies, and their employees shall not "be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S.A. § 8541; 42 Pa. C.S.A. § 8545 ("An employee of a local agency is liable for civil damages . . . only to the same extent as his employing local agency . . . ."). However, Individual Defendants may be held liable in their personal capacities where the alleged tort involved "malicious or willful conduct." *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 277 (E.D. Pa. 2007); 42 Pa. C.S.A. § 8550. As this Court explained in *Kahler v. County of Delaware*:

> Under Pennsylvania law, "willful misconduct is a demanding level of fault." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). It occurs where "the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied[,]" *i.e.*, where the plaintiff establishes "specific intent." *Bright*, 443 F.3d at 287 (quoting *Robbins v. Cumberland Cnty. Children & Youth Servs.*, 802 A.2d 1239, 1252–53 (Pa. Commw. Ct. 2002)). "'[W]illful misconduct' in this context has the same meaning as the term

'intentional tort.'" *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001)).

2025 WL 2778092, at *9.

Pennsylvania law distinguishes between "wanton" and "willful" misconduct. Wanton misconduct—an intentional, unreasonable act done in disregard of a known or obvious risk—is not enough to overcome PSTCA immunity. *Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443–44 (Pa. 1965); *see also Bright*, 443 F.3d at 287 ("[K]nowingly and deliberately disregard[ing] a known risk" is insufficient to establish willful misconduct.); *Williams v. City of Phila.*, 569 A.2d 419, 421–22 (Pa. Commw. Ct. 1990) (Acting with "a reckless disregard of the existing danger[,] . . . constitutes wanton, not willful, misconduct.").

Defendants are a municipal employer and its officials and employees who are generally entitled to governmental immunity. *See* 42 Pa. C.S.A. §§ 8541, 8545. Ms. Bonsall's state law tort claims in Counts IV, V, and VI against the County, County Council, and Individual Defendants in their official capacities are therefore barred as a matter of law.

With respect to the individual capacity claims, Individual Defendants argue Ms. Bonsall has alleged no facts supporting an inference that they "acted willfully or intended the result with respect to either negligence claim." ECF No. 36 at 15. The Court agrees.

Both negligence counts are based on Individual Defendants' failures to investigate, prevent, or stop Boyce, but Ms. Bonsall specifically alleges she never reported Boyce's misconduct to anyone at DES until after his termination. She also does not allege that Individual Defendants witnessed Boyce's mistreatment of her, except that he often closed the door to his office while she was inside. While Individual Defendants had witnessed Boyce's inappropriate comments toward and about female employees at DES and may have referred to or heard Ms. Bonsall referred to as Boyce's "girlfriend," any failure to investigate Boyce's relationship with Ms. Bonsall would

amount to a reckless, or even deliberate, disregard of a known risk. This is insufficient to overcome PSTCA immunity. *See Bright*, 443 F.3d at 287.

**VIII.        Count VI: Intentional Infliction of Emotional Distress**

Ms. Bonsall also brings an IIED claim against Defendant Edward Beebe in both his personal and official capacities. Defendants move to dismiss this claim, arguing Ms. Bonsall has not alleged Beebe engaged in any conduct "that was so outrageous in character or extreme to go beyond all possible bounds of decency," and that generally, "[d]ifficult workplace environments alone cannot serve as a basis for an IIED claim." ECF No. 36 at 17.

The Court notes that while a municipal employee is not immune from suit for intentional torts, *Bright*, 443 F.3d at 287, a plaintiff must still plead facts supporting each element of the claim. To state an IIED claim under Pennsylvania law, "a plaintiff must allege conduct that: (1) is extreme and outrageous; (2) is intentional or reckless; and, (3) causes severe emotional distress." *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000). Ms. Bonsall provides no substantive argument to support her IIED claim against Beebe.

The entire response presented in her opposition brief is:

> The undersigned has briefed this matter in *Kahler* and *Payne* where the undersigned has argued that Beebe can be sued in his individual capacity. The Court has issued ruling [sic] covering this in *Kahler* and *Payne*. Plaintiff abundantly fulfilled pleading requirements with respect to this Count, including with respect to allegations of "outrageousness", which is a factual matter not to be determined as a matter of law at this stage.

ECF No. 38 at 8.

Notably, *Kahler* does not include an IIED claim against Beebe, and the argument in opposition to the motion to dismiss in *Payne* does not cite to any case law or provide any legal analysis. Rather, it copies and pastes four paragraphs from the Paynes' second amended complaint. *See* Pls.' Opp. Mot. Dismiss 2d Am. Compl., *Payne*, No. 25-295, ECF No. 24 at 11. The only

paragraph therein containing **factual** allegations, as opposed to legal conclusions, involves specific retaliation the Paynes experienced as a result of standing up for themselves. *Id.* Ms. Bonsall's IIED claim against Beebe is different. It involves Beebe's retrieval of Ms. Bonsall while she stepped outside to avoid Boyce. ECF No. 33 ¶ 183. Plaintiff does not analogize this conduct to any case law or even set forth the standard for what conduct amounts to "extreme and outrageous" under Pennsylvania law.

"This Court's role is not to craft arguments for the parties, especially those represented by counsel." *Hausknecht v. John Hancock Life Ins. Co. of N.Y.*, 614 F. Supp. 3d 168, 186 (E.D. Pa. 2022). It is the party's responsibility to "offer some argument or development of [her] theory," "cite relevant precedents," and "frame the issues for decision." *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) (citation omitted). Additionally, a party's failure to respond to an argument "acts as a concession of that argument." *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017) (not precedential); *see also John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived.").

Here, Plaintiff's response that she has "abundantly fulfilled pleading requirements with respect to this Count," ECF No. 38 at 8, is not enough. Merely asserting she has stated a claim, without any citation to legal authority or development of her legal theory, is not a legal argument, and this Court will not "engage in a freewheeling investigation into [Pennsylvania] state law without meaningful briefing on the subject." *Sang Geoul Lee*, 720 F. App'x at 666. Therefore, Count VI is dismissed.

**IX.**      **Conclusion**

For the foregoing reasons, the Court dismisses Counts IV, V, and VI in full, and dismisses Count I against Individual Defendants and the County Council. The *Monell* claim in Count I, along with Counts II and III shall proceed against the County. An appropriate Order follows.